## THE PHILIP J. MILLER.

(District Court, E. D. New York. March 13, 1912.)

TOWAGE (§ 11*)—LIABILITY FOR INJURY TO TOW—PLACING AT DOCK.

    An owner, who sends a coal barge to be unloaded at a place where she will be compelled to lie on the bottom at low tide, assumes the risk of such inadvertent happenings as are likely to occur from such use and conditions; while, on the other hand, the captain of a towboat, who takes a barge to such a position, is bound to use judgment and reasonable care

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in placing her. Evidence *held* insufficient to show that an injury to a barge while so lying was due to any fault of the tug which towed her there.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

In Admiralty. Suit by Asa Chappell, owner of the barge Adelia, against the steamboat Philip J. Miller. Decree for respondent.

Martin A. Ryan, for libelant.

Armstrong & Brown, for claimant.

CHATFIELD, District Judge (orally at close of case). As usual there are a good many facts that are not capable of dispute in this case. The Adelia, at the time the towing was undertaken, was not trimmed; that is, while she drew 5 feet 8 inches at the bow, she drew a little over 6 feet at the stern. The voyage was not attempted until she was lightened by pumping, and until it was evident that a proper trim could be obtained by removing some of the coal from the stern during the trip up the Sound. It is evident that, in the few days that they could wait, no better tide was likely to be obtained from the position of the moon; that is, they would have flood tide only in the afternoon, during daylight hours, for several days. It is evident, from the chart and from the draft of the tug and of the other boats, that between the time when the captains of the tug and the barge walked up the channel of the creek, and the time they started to take the boat in, 6 feet of water must have run into the creek, and it is also evident that that maximum depth continued for only a few moments. It is evident that the depth of water was about the same for the whole length of the channel, as the boat was grounding to about the same extent after starting in the creek until the tide began to run out. It is evident, from the captain's testimony and from the measurements taken by the men on the tug, that she drew a little less than 6 feet at the bilges, and there seems to be room enough in the channel so that even a boat 96 feet long and 17 feet 6 inches wide should pass up the channel without striking. There was not any obligation upon the tug captain to make a measurement of the barge; but, in so far as he did make measurements, he was bound to do it properly, and to use proper judgment in drawing conclusions therefrom.

The testimony shows that the captain of the barge considered her to be flat-bottomed, and that his representation as to the draft of the barge was (and would have been, even if questioned at length) that her draft was as great at the bilge as at the keel. It is apparent from the testimony that her actual draft was more than 6 feet at the keel, whether that be due to the shipbuilding methods in Northern waters, or whether it be due to some defect or sag in her structure. But, whatever be the fact as to that, the obligation rested on the tug captain to use good seamanship and navigation in handling the boat, to use proper judgment in determining whether or not he could take the boat in and land her safely at the berth at that condition of the tide,

and to see that she was not placed in any position that was hazardous in anything that he did.

It appears, also, that the boat was to be left alongside of the wharf in the mud waiting for the unloading, and that no negligence is chargeable because the captain of the tug assumed that, if she was in a proper berth, she would be safe on the mud in the creek. So far as her ability to stand what she was expected to undergo at the wharf is concerned, the tug is not responsible for the result.

The testimony that a Ladew tug and barge passed down, and that the Miller worked over to starboard, so that the Ladew tug could get by in the channel, makes it apparent that if there were any irregularity or difference in level on the starboard side of the channel, and if the barge had hung at that point, it would not have been the barge's fault if she had been twisted.

But the testimony also shows that she was moved after the Ladew tug went by, that she did not hang upon the bank at that point, so as to prevent the captain of the tug from shifting her further along and into a position in the center of the channel. Apparently the conditions were such that the boat could be kept in the channel, and the burden was on the tug to leave her in a position where she could lie on an even keel. No reason why he did not do so has appeared, and much testimony that she was in this position has been presented.

It seems to the court that the only question of fault that has been suggested against the tug is that the captain misjudged, or did not correctly estimate, the exact position of the boat at the time that he was proceeding after the Ladew tug went down the channel.

Now, as to the condition of the boat and the manner in which the accident occurred, it is apparent that the injury from which the leaking occurred was inflicted at the low tide, upon the night after the boat was taken into the creek. The testimony of the witnesses agrees that she was filled with water at the next high tide. The testimony of the boat's captain is to the effect that certain timbers were broken and other damage resulted at succeeding tides. There is testimony as to certain holes caused by suction, and changes in the level of the creek bottom around the boat; but there is no evidence of any substantial bank or unusual cause of strain, and the injuries that were received at the subsequent tides are merely a consequence of the boat remaining in the position in which she sank from the original cause. The occurrence upon the first low tide is the only one we have to do with here.

The testimony seems to show that the bilge log was broken on the starboard side forward, and the side planks were weak at the point of the break; but in view of the location of the twist, and the evidence that all of the pressure was away from the starboard side, it is impossible to hold that the injury to the bilge log could have occurred simply from the pressure of the coal. It seems to the court that the evidence shows the contrary; that the unevenness in the bottom of the boat, whether it be from the manner of construction, or from her condition, coupled with some inequality in the bed of the creek, caused such a wrench that a leak was sprung at the bilge log; that the in-

juries occurred from the pressure and strain after the boat filled with water, as the tide came in again, and that such an injury might have happened at the dock, or in any other position; that the testimony does not show that the boat was out of the channel to such an extent that it should be held the result of bad, negligent towage; nor can the court see how it can hold the tug responsible for not picking out a better berth under water to preserve the delicate conditions that seem to have been necessary to be continued in order to protect the barge.

If it were possible to adopt some rule with reference to these short mud voyages, landing barges at docks around the port of New York, so as to throw responsibility upon one party or the other, I should very gladly do it. It seems to me that, if a man sends a barge to such a locality, he assumes the risk of such inadvertent happenings as are likely to occur from the use to which the barge is put, and that, in the same way, captains of towboats, taking barges in such positions, ought to be made to assume more risk than to always put a boat in the mud and trust to luck. But, as the case stands, I do not see that there was any negligent towage. I feel that the chance of getting a boat into that position safely, on such a short tide, was enough of a hazard, however, so that I shall not allow costs in the case against the owner of the boat.

Libel dismissed, without costs, on the ground that no negligent towage is shown.